E-FILED
Friday, 24 September, 2021  10:47:41 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-40069-JES-JEH |
| | ) | |
| JOSEPH ALLEN WILCHER, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendant's Motion (Doc. 38) to Dismiss Indictment, the United States' Response (Doc. 44), Defendant's Reply (Doc. 46) and Supplemental Reply (Doc. 54), and the United States' Supplemental Response (Doc. 55). For the reasons set forth below, Defendant's Motion (Doc. 38) is DENIED.

### BACKGROUND

Defendant Wilcher is charged with attempted enticement of a minor in violation of Title 18 U.S.C. §§ 2422(b) and 2428, and travel with intent to engage in illicit sexual activity in violation of 18 U.S.C. § 2423(b). The charges resulted from an online "sting" operation in which FBI Agent Brian Wainscott posed as a female on an internet dating application called MeetMe. The fake profile listed the user's name as "Nikki," gender as female, age as 18 years old, and stated she was interested in both men and women.

On November 6, 2020, Defendant messaged Nikki through the MeetMe[1] application. The United States has produced a spreadsheet of the chats between Defendant and Nikki from

---

[1] Agent Wright incorrectly refers to the application's name as "Skout," which is a similar application to MeetMe, during the grand jury proceedings.

November 6 to November 8, 2020. The two discussed topics such as where each resided using the MeetMe application. Eventually, Defendant gave Nikki his phone number so the two could communicate by text message. Around 1:15 p.m. on November 9, 2020, Nikki sent the first text message to Defendant. From November 9, 2020 through November 11, 2020, Nikki and Defendant exchanged 124 text messages. Nikki mentions being in high school but does not disclose her age at this time. She informs Defendant she has had sex with a 39-year-old man previously and enjoyed the experience. She also informs Defendant her parents will be out of town the upcoming weekend, and the two make plans for Defendant to visit her.

On November 10, 2020, Defendant asks Nikki if she is "looking for something real, to which she responds, "Not really I'm only in high school but let's see where it goes." The two continue text messaging on November 11, 2020. On November 12, 2020, Nikki text messages Defendant informing him that she is only 15 years old.

Upon learning Nikki's age, Defendant expresses surprise and acknowledges he "could get in a lot of trouble," "it could be a set up too." Doc. 38-2 at 10. On Friday, November 13, 2020, Nikki and Defendant have a telephone conversation that was really between Defendant and a Confidential Human Source ("CHS") working for the FBI. During the call Defendant states he is nervous "[j]ust 'cause I thought you know I was hoping that you know you at least was 18 'cause you know.'" Doc. 38 at 4–5. Defendant alternates between a desire to meet Nikki and fear that the situation is a set up. Later that day, Defendant drove from his home in Cedar Rapids, Iowa to Rock Island, Illinois. Defendant parked down the street from Nikki's address but refused to approach the house alone, asking Nikki to come out of the house and walk to the corner of the block so he could see her before approaching the house. The CHS proceeds to exit the house but

does not approach Defendant. Nikki asks Defendant to flash his headlights. When he does so, law enforcement officers appear and arrest Defendant in his car.

The United States filed a criminal complaint against Defendant, charging him with attempted enticement of a minor in violation of 18 U.S.C. § 2522(b). Magistrate Judge Hawley found the complaint was supported by probable cause and released Defendant on bond. On December 3, 2020, the United States filed a two-count indictment against Defendant, charging him with attempted enticement of a minor in violation of 18 U.S.C. § 2522(b) and travel with intent to engage in illicit sexual activity in violation of 18 U.S.C § 2423(b).

The United States presented Defendant's case to a grand jury on December 1, 2020. Defendant received a transcript of the grand jury proceedings on May 17, 2021 in anticipation of the scheduled trial date. FBI Agent Anthony Wright testified before the grand jury. Wright testified that he participated in the online undercover sting operation using online dating applications, and that Defendant contacted an undercover agent purporting to be a 15-year-old girl through a dating application. Wright testified that Defendant was a 39-year-old, believed the undercover agent was a 15-year-old girl, and communicated for the purpose of meeting to have sex. Wright further testified that on November 13, 2020, Defendant drove to Rock Island to the target residence, parked down the street, flashed his lights in response to the undercover's request, and was arrested. Wright further testified that the undercover told Defendant she was in high school, that Defendant's mother testified at his detention hearing that when he left the house to go to Rock Island Defendant told her he was going to meet someone for a date, Defendant sent the undercover a picture of his penis, and Defendant told the undercover he wanted to "F" all night long.

3

Following Wright's testimony the prosecutor asked the grand jurors if they had any questions. In response a juror asked the following: "Just to be clear, how -- so this guy posted something on this app called Skout you said?" Wright responded, "All we did was post a profile on Skout, and it is like a dating application to where somebody sees your picture, and then they can reach out and make contact with you." The juror then clarified, "[s]o you all posted a profile, and this person responded to that profile?" which Wright responded, "[c]orrect." The prosecutor then asked Wright some further questions about Defendant's use of his phone. Wright confirmed that the conversation between Nikki and Defendant moved from the dating application to text messaging, and that Defendant had a cell phone when arrested. The prosecutor then informed the grand jury that the indictment also contained a forfeiture allegation seeking forfeiture of the cell phone. *Id*. at 6.

The prosecutor then presented the indictment to the grand jury and asked it "to consider a true bill." The following exchange then occurred:

> All right. We have the two-count indictment. The one count is attempted enticement of a minor, the second is the traveling count to engage in elicit sexual activity, and then we have the forfeiture allegation concerning the telephone that was used, and we have a vote sheet, and we'd ask you to consider a true bill. Yes, sir?
>
> JUROR: Is there an age minimum to that Skout application?
> A. So the age minimum is 18.
> JUROR: Okay. So you are posting, well, what would be a profile that would violate terms of service?
> A. Correct.
> JUROR: Okay.
> A. Because otherwise we wouldn't be able to get on it.

Doc. 38-3 at 6–7. The prosecutor then asked Wright if that was one of the "primary reasons" that in sting cases such as Defendant's the conversations would move from the dating application to text messaging. Wright confirmed it was. *Id*. Wright was then excused, the prosecutor and court reporter left the room, and the grand jury began to deliberate. *Id*. at 8. About three minutes later

the prosecutor and court reporter came back into the grand jury room and "grand jury

proceedings were conducted" for about another thirteen minutes. *Id*. Following these

proceedings, Wright was recalled to testify and gave the following testimony:

> Q. [Prosecutor] Special Agent Wright, you are still under oath. I want to refer your
> attention to some of the texts, some of the texts that took place between Mr. Wilcher
> and the undercover. In regards to the undercover agent, she portrayed herself as a
> 15-years-old, correct?
> A. Correct.
> Q. And could you read some excerpts of the text that took place early on in the
> conversation with Mr. Wilcher?
> A. So early on the undercover states, not really, I'm only in high school but let's see
> where it goes. And then the next thing she said was, babe, I want to be honest, don't
> get mad, I'm 15. Subject responds, oh, yeah. OCE said, yeah. And OCE is a term
> that we use in the FBI for online covert employee. So subject says, could get in a
> lot of trouble. Could be a setup, too. How can you reassure? The OCE states, I'm
> not a bitch. It is not like that at all. It is only sex. Subject states, how would we even
> meet up to even know if you are real? Can we video chat later? Sure, but I got to
> make sure my mom isn't around. I just want to make -- the subject says, I just want
> to make sure you are real. Subject states, are you a virgin? OCE says, nope. The
> conversation goes on. Subject then says, after talking about sex, he states, just
> wondering if we should get a motel room. OCE says, Chicago up 2 U. She was
> talking about her parents going to Chicago for the weekend. Subject says, cool. I
> just don't want them to pop in on us. Subject states, I would like to fuck that pussy
> all night long. Subject states, can I see a pic of that tiny booty? Have you done anal?
> OCE says, tomorrow. Subject says, I would like to see that tonight.

*Id*. at 8–10.

Next, the prosecutor addressed a question asked by a grand juror during a period where

the proceedings were not transcribed:

> [Prosecutor] All right. Then there was a question, I think more of a legal question,
> and there is the case of *United States vs. Howard*, which is a 2015 case, and it
> discusses that a government agent may provide an opportunity for a defendant to
> commit a crime. This is a quote from the case. "Where the defendant is simply
> provided with the opportunity to commit a crime, the entrapment defense is of little
> use because the ready commission of a criminal act amply demonstrates the
> defendant's predisposition." The Court further said that the undercover, who was
> Ashley or the person was portrayed was Ashley, stated early on in the exchange that
> she was 14 years old and asked a number of times if it was a problem. Despite these
> opportunities to back away, the defendant proceeded to engage her in sexually

explicit conversations and attempted to persuade her to engage in sexual activity. And that's the case law on that subject. Are there any additional questions?

*Id*. at 8–11.

## LEGAL STANDARD

Although the grand jury is an institution separate from the courts, courts have supervisory power "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions[.]'" *United States v. Williams*, 504 U.S. 36, 46 (1992) (quoting *United States v. Mechanik,* 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment)). One of these "clear rules" is a prohibition on giving false testimony before the grand jury or suborning such testimony. 18 U.S.C. §§ 1623, 1622; *Mechanik*, 475 U.S. at 74. Another rule suggested by some courts is that the prosecutor must give accurate legal advice to the grand jury. *See United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991). But dismissal of an indictment is only warranted where the prosecutorial misconduct substantially influences the grand jury's decision to indict, or at least where there is grave doubt that the decision to indict was free from the substantial influence of the violations. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (O'Connor, J. concurring).

Further, "the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Williams*, 504 U.S. at 51. Thus, the grand jury need "hear only the prosecutor's side." *Id*. Accordingly, since the inception of the Republic, the subject of the investigation by the grand jury has never been thought to have the right to present exculpatory evidence or defenses. *Id*. at 51–52.

6

**DISCUSSION**

In his Motion, Defendant argues two independent acts of misconduct by the prosecution warrant a dismissal of the indictment. Doc. 38 at 15–29. First, Defendant alleges Agent Wright "presented perjured testimony when he testified, upon being recalled, that the undercover agent 'early on told Mr. Wilcher she was in high school and immediately thereafter told Mr. Wilcher she was 15." *Id*. at 15. Second, Defendant alleges the prosecutor gave "an incomplete and misleading explanation of the law of entrapment." *Id*. at 16. Based on these two alleged instances of misconduct, Defendant asks the Court to dismiss the indictment. *Id*. Because Agent Wright did not present perjured testimony, the prosecutor's legal explanation of the law of entrapment was correct, and entrapment is an affirmative defense outside the purview of the grand jury, the Court denies Defendant's Motion.

**(1) Agent Wright did not Present Perjured Testimony**

Defendant first argues Agent Wright "presented perjured testimony when he testified, upon being recalled, that the undercover agent 'early on told Mr. Wilcher she was in high school and *immediately thereafter* told Mr. Wilcher she was 15.'" Doc. 38 at 15 (emphasis added). As emphasized in the previous sentence, Defendant argues Agent Wright misled the grand jury by indicating that the undercover agent told Defendant she was only 15 early in their conversations and immediately following the undercover's statement that she was in high school. In fact, the undercover agent sent Defendant the message about being in high school on November 10, 2020, after they had conversed for a couple days. Further, the undercover agent did not inform Defendant she was 15 until November 12, 2020. Defendant argues these purported misrepresentations were material because they "had a natural effect or tendency to impede or influence the grand jury's decision to return a true bill or not." *Id*. at 19. However, Defendant

does not explain how these purported misrepresentations influenced the grand jury's decision beyond that general conclusory statement.

In its Response, the United States argues (1) Defendant suffered no prejudice because entrapment is an affirmative defense not material to the probable cause inquiry; and (2) the United States did not engage in any misconduct before the grand jury. Doc. 44 at 14–28. Further, the United States objected[2] to further disclosure of the grand jury proceedings. *Id*. at 29–30.

Again, Defendant takes issue with Agent Wright's following two statements: "So early on the undercover states, not really, I'm only in high school but lets see where it goes. And then the next thing she said was, babe, I want to be honest, don't get mad, I'm 15." Doc. 38-3 at 9. Defendant's argument that Agent Wright misled the grand jury by characterizing the first message as occurring "early on" is meritless. "Early on" is not a precise moment. The message was sent after the two had talked for a couple days. A couple of days after they began messaging, in the context of this case, could arguably be considered "early on." This statement was not misleading. Moreover, it was not material to the grand jury's probable cause inquiry. *Bank of Nova Scotia*, 487 U.S. at 256.

The same goes for the second statement. The United States explains that, although two days elapsed between the "high school" message and the "I'm 15" message, when viewed in context, it is clear that Agent Wright did not mislead the grand jury:

> In context, the testimony's meaning was apparent and accurate. Agent Wright was first asked whether the girl (the undercover agent) "portrayed herself as a 15-year old." R. 38-3 at 8. Counsel then asked him to read "some excerpts of the text" messages. *Id*. at 8–9. He responded: "So early on the undercover states, not really, I'm only in high school but let's see where it goes. And then the next thing she said was, babe, I want to be honest, don't get mad, I'm 15." *Id*. at 9. True, "I'm 15" was not literally the "next thing" she said after "I'm only in high school." It was, however, the next thing she said *about her age*. R. 38-2 at 11–12.

---

[2] As discussed below in this Opinion, the Court ordered disclosure of the entire grand jury proceedings and allowed further briefing in support of the Parties' arguments regarding dismissal of the indictment. *See infra* sec. (3).

Doc. 44 at 26–27. The Court agrees. Agent Wright's statement, viewed in the context in which it

was given, may have been clumsy but was far from intentionally misleading. Further, aside from

bare conclusions, Defendant is completely unable to explain how Agent Wright's statement, even

if false, influenced the grand jury's decision to indict. For example, Defendant argues "that

timeline bears significantly on Mr. Wilcher's conduct and whether it was unlawful" but fails to

go on to explain how or why the statement is relevant to the lawfulness of Defendant's conduct.

Doc. 38 at 19. Rather, Defendant simply states that "Nikki communicated with Mr. Wilcher for

five days before she mentioned her age" and "informed Mr. Wilcher that her sexual history

included a thirty-nine-year-old man." The Court is unaware of and counsel does not point to any

element in the enticement or travel charges which hinges on how long the accused talked with

the purported minor before learning her age, or whether the purported minor previously engaged

in sexual activity with others who had obtained the age of majority. *Cf.* 18 U.S.C. §§ 2422(b) and

2428, 18 U.S.C. § 2423(b). And, as will be discussed below, if those facts supported an

affirmative defense, the prosecutor had no duty to discuss or consider such defense before the

grand jury.

**(2) The Prosecutor did not Misstate the Law of Entrapment**

Next, Defendant argues the prosecutor misstated the law of entrapment. Recall that

during the grand jury proceedings, the prosecutor made the following statement:

> [Prosecutor] All right. Then there was a question, I think more of a legal question,
> and there is the case of *United States vs. Howard*, which is a 2015 case, and it
> discusses that a government agent may provide an opportunity for a defendant to
> commit a crime. This is a quote from the case. "Where the defendant is simply
> provided with the opportunity to commit a crime, the entrapment defense is of little
> use because the ready commission of a criminal act amply demonstrates the
> defendant's predisposition." The Court further said that the undercover, who was
> Ashley or the person was portrayed was Ashley, stated early on in the exchange that
> she was 14 years old and asked a number of times if it was a problem. Despite these

> opportunities to back away, the defendant proceeded to engage her in sexually
> explicit conversations and attempted to persuade her to engage in sexual activity.
> And that's the case law on that subject. Are there any additional questions?

Doc. 38-3 at 8–11. Defendant argues the above statement "was seriously wrong." Doc. 38 at 21.

First, Defendant argues, *Howard* was an unpublished nonprecedential opinion from the Eleventh

Circuit. That is true. What is also true is that *Howard* was paraphrasing the Supreme Court's

holding in *Jacobson v. United States*, 503 U.S. 540, 550 (1992). Thus, while the prosecutor may

have cited a non-binding nonprecedential opinion from out of this circuit, that case merely

recited the Supreme Court's opinion in *Jacobson*. Notably, counsel does not present an argument

that the Supreme Court's decisions are not binding on this lower court. Defendant's argument is a

red herring and lacks legal merit.

Next, Defendant argues the prosecutor misled the grand jury because his recitation of the

statement in *Howard* "is an incomplete and misleading statement on entrapment law." *Id*. at 21.

Defendant believes that a more encompassing quotation was called for, such as the larger

selection from *Jacobson* below:

> There can be no dispute about the evils of child pornography or the difficulties that
> laws and law enforcement have encountered in eliminating it. Likewise, there can
> be no dispute that the Government may use undercover agents to enforce the law.
> "It is well settled that the fact that officers or employees of the Government merely
> afford opportunities or facilities for the commission of the offense does not defeat
> the prosecution. Artifice and stratagem may be employed to catch those engaged in
> criminal enterprises."
>
> In their zeal to enforce the law, however, Government agents may not originate a
> criminal design, implant in an innocent person's mind the disposition to commit a
> criminal act, and then induce commission of the crime so that the Government may
> prosecute. Where the Government has induced an individual to break the law and
> the defense of entrapment is at issue, as it was in this case, the prosecution must
> prove beyond reasonable doubt that the defendant was disposed to commit the
> criminal act prior to first being approached by Government agents.

*Jacobson v. United States*, 503 U.S. 540, 548–49 (1992) (citations omitted). Defendant goes on to argue the prosecutor should have instructed the grand jury on the affirmative defense of entrapment using the Seventh Circuit's pattern instructions for that defense. The Court disagrees. First, it appears that the prosecutor's recitation of *Howard*, which paraphrased the passage in *Jacobson*, was chosen because the facts in that case closely align with the allegations in the instant case. In *Howard*, the statement from the Eleventh Circuit that preceded the citation and quote from *Jacobson* recited, "[a]lthough a Government agent provided an opportunity for Howard to commit a crime, Howard readily took advantage of that opportunity." 625 F. App'x 934, 937 (11th Cir. 2015). Similarly, in this case the United States alleges that after Nikki informed Defendant she was 15, Defendant acknowledged he "already kind of assumed" she was younger and a minor, expressed concern that the situation "could be a set up," solicited explicit photographs from Nikki, discussed meeting the next day for the purpose of engaging in sexual activity ("I'd like to fuck all night long"), sent Nikki a picture of his erect penis, and drove to Nikki's residence. Thus, the prosecutor's statement to the grand jury was not misleading but was rather a permissible statement of the law of entrapment as it relates to the allegations in this case. *See United States v. Williams*, 504 U.S. 36, 54 (1992) ("It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'").

Second, even if the prosecutor's remarks were misleading, Defendant is unable to show prejudice resulting from those statements because entrapment is an affirmative defense and is thus irrelevant to the grand jury's consideration of whether probable cause exists that a crime has

been committed. *See United States v. Mayfield*, 771 F.3d 417, 440 (7th Cir. 2014) (entrapment is an affirmative defense). Because the prosecutor's characterization of the entrapment defense could not have influenced the grand jury's decision to indict, Defendant's request to dismiss the indictment must be denied. *Bank of Nova Scotia*, 487 U.S. at 256.

**(3) Defendant was Not Prejudiced and Dismissal of the Indictment is Not Warranted**

Finally, Defendant asked the Court to order the disclosure of the entirety of the grand jury proceedings. On September 9, 2021, after reviewing the Parties briefs, the Court ordered the United States to produce the entire grand jury transcript for *in camera* review pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i) (permitting a district court to "authorize disclosure—at a time, in a manner, and subject to any other conditions that [the court] directs—of a grand jury matter: (i) preliminarily to or in connection with a judicial proceeding"). The Court found the transcript was necessary to determine whether Defendant had shown the disclosure of grand jury testimony outweighed the policy of secrecy. *See Carlson v. United States*, 837 F.3d 753, 762-63 (7th Cir. 2016) (discussing a district court's broad discretion to order disclosure of grand jury materials). After conducting an *in camera* review, the Court found the disclosure of the grand jury testimony outweighed the policy of secrecy and ordered the United States to produce the transcript to Defendant through discovery. In doing so, the Court allowed Defendant to supplement his Motion and gave the United States additional time to respond to any supplemental brief by Defendant. Both Parties submitted supplemental briefs in support of their original briefing on Defendant's Motion to Dismiss the Indictment. Docs. 54; 55.

As recited by Defendant in his Motion, "[w]hen alleging prosecutorial misconduct, [the defendant] must show 'the alleged misconduct would compel dismissal of the indictment.' " Doc. 38 at 27–28 (quoting *United States v. Buske*, No. 09-CR-65, 2010 WL 3023364 at *2 (E.D. Wis.

12

July 29, 2010)). The Court, having reviewed the transcript in its totality, and the supplemental briefs finds no misconduct took place and dismissal of the indictment is not warranted.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 38) to Dismiss Indictment is DENIED. In light of the Court's ruling, the Motion Hearing set for Monday, 9/27/2021 at 10:00 AM via video conference before Judge James E. Shadid is vacated.


Signed on this 24th day of September, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge